**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

| | |
|---|---|
| RICKY ESPINAL, on behalf of himself and all others similarly situated, | CIVIL COMPLAINT |
| Plaintiff, | CASE NO. 0:21-cv-61419 |
| v. | DEMAND FOR JURY TRIAL |
| MIDLAND CREDIT MANAGEMENT, INC., | |
| Defendant. | |

**CLASS ACTION COMPLAINT**

NOW COMES Plaintiff RICKY ESPINAL ("Plaintiff"), by and through his undersigned counsel, and submits the following claims against Defendant pursuant to Fair Debt Collection Practices Act ("FDCPA"):

**I. Jurisdiction, Parties and Venue**

1. Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors" and "to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

2. Subject matter jurisdiction is conferred upon this Court by Section 1692k(d) of the FDCPA as well as 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3. Plaintiff RICKY ESPINAL is a citizen of the State of Florida and resides in this judicial district.

4. Defendant MIDLAND CREDIT MANAGEMENT, INC. ("MCM" or "Defendant"), is a California based debt collector and otherwise licensed to collect

debts within the State of Florida. MCM can be served at its headquarters at 350 Camino de la Reina, Suite 300, San Diego, California 92108.

5.      Venue is proper pursuant to 28 U.S.C. §1391 because Defendant conducts substantial debt collection business in this judicial district.

## II. Summary of the FDCPA

6.      Section 1692 of the FDCPA contains "Congressional findings" and a "declaration of purpose".

7.      Section 1692 states as follows:

**(a) Abusive practices**

There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.

**(b) Inadequacy of laws**

Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

**(c) Available non-abusive collection methods**

Means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts.

**(d) Interstate commerce**

Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

**(e) Purposes**

It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using

2

> abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

*See*, 15 U.S.C. § 1692.

8.      One purpose of the FDCPA was to address "the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a).

9.      In enacting the FDCPA, Congress determined that "[a]busive debt collection practices contribute to" societal harms, including increasing "the number of personal bankruptcies," "marital instability," "the loss of jobs," and "invasions of individual privacy." 15 U.S.C. § 1692(a).

10.      Congress determined that "[e]xisting laws … are inadequate to protect consumers" and that "[m]eans other misrepresentation or other abusive debt collection practices are available for the effective collection of debts." 15 U.S.C. §§ 1692(b)-(c).

11.      The FDCPA provides that "[m]eans other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts." 15 U.S.C. § 1692(c).

12.      Congress enacted the FDCPA to protect ethical debt collectors from being competitively disadvantaged by debt collectors who do not abide by the prohibitions set forth by the FDCPA. 15 U.S.C. § 1692(e).

13.      The FDCPA's statutory findings explicitly identify "invasions of individual privacy" as one of the harms against which the statute is directed. 15 U.S.C. § 1692(a).

### III. Defendant's Collection Activities

14.    MCM's principal purpose is the collection of past-due and defaulted debts owed by natural persons to others where the debts were incurred primarily for personal, family or household purposes. MCM uses the mails, telephone, the internet and other instruments of interstate commerce to collect consumer debts.

15.    MCM has acted as a "debt collector" as this term is defined by § 1692a(6) of the FDCPA by causing form collection letters to be sent to Plaintiff's residential address in this district to collect monies purportedly incurred in relation to certain credit cards issued to Plaintiff by Credit One Bank, N.A. and Citibank, N.A. (hereafter the "Subject Debts").

16.    Plaintiff is a "consumer" as defined by § 1692a(3) of the FDCPA because MCM regarded Plaintiff as being a natural person obligated or allegedly obligated to owe money incurred for personal and household expenses with regard to the Subject Debts.

17.    Plaintiff intended to pay off the Subject Debts with the original creditors of the Subject Debts, but financial circumstances prevented Plaintiff from paying off the Subject Debts.

18.    Each of Subject Debts meet the statutory definition of "debt" (as defined by § 1692a(5) of the FDCPA) because Defendant regarded the Subject Debts as obligations to pay money to Defendant arising out of a transaction in which the money, property, or services were incurred for personal, family, or household purposes.

19.     With regard to each collection letter sent to Plaintiff in an attempt to collect the Subject Debts, MCM used a third-party vendor to mail the collection letters to Plaintiff's address in this judicial district (hereafter "MCM's Collection Letters" or "Collection Letters").

20.     As detailed below, MCM used a third-party mail vendor to mail form/template collection letters to Plaintiff where the letters were mailed to Plaintiff in an attempt to collection the Subject Debts.

21.     MCM's use of third-party mail vendor to mail MCM's Collection Letters violated Section 1692c(b) of the FDCPA as MCM's use of a letter vendor improperly disclosed Plaintiff's status as a debtor to the third-party vendor in contravention of Plaintiff's rights to privacy that is recognized by the FDCPA.

22.     MCM's Collection Letters claimed that MCM was entitled to seek compensation from Plaintiff in relation to the Subject Debts.

23.     MCM's Collection Letters were an attempt to collect the Subject Debts.

24.     Section 1692a(2) defines the term "communication" to mean "the conveying of information regarding a debt directly or indirectly to any person through any medium." MCM's Collection Letters were a "communication" as defined by § 1692a(2) of the FDCPA because the Collection Letters were a means of conveying information regarding the Subject Debts.

25.     MCM's Collection Letters meet the statutory definition of "communication" (as defined by § 1692a(5) of the FDCPA) because MCM's Collection Letters were each a means for the conveying of information regarding

the Subject Debts where MCM communicated the existence of the Subject Debts to MCM's letter vendor when MCM transmitted Plaintiff's personal information, including the amount of the debt, MCM account numbers and the account numbers of the original creditor, to MCM's third-party letter vendor.

26.     In addition to using a third-party vendor to mail MCM's Collection Letters, certain envelopes that were used to mail MCM's Collection Letters were marked with the words "**TIME SENSITIVE DOCUMENT**" and "***Extremely Urgent***" in violation of Section 1692f(8) of the FDCPA, which prohibits debt collectors from "using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram[.]"

27.     MCM's marking of envelopes with the words "**TIME SENSITIVE DOCUMENT**" and "***Extremely Urgent***" also violated Section 1692e of the FDCPA which states that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

28.     In particular, as detailed below, MCM's marking of envelopes with the words "**TIME SENSITIVE DOCUMENT**" and "***Extremely Urgent***" also violated Section 1692e(2)(A) of the FDCPA, which prohibits debt collectors from making a "false representation of . . . the character, amount or legal status of any debt" during the collection of any consumer debt.

29.     As discussed below, MCM's marking of envelopes with the words "**TIME SENSITIVE DOCUMENT**" and "***Extremely Urgent***" also violated Section

1692e(10), which prohibits debt collectors from using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

30.    As discussed below, MCM's marking of envelopes with the words "**TIME SENSITIVE DOCUMENT**" and "*Extremely Urgent*" also violated Section 1692f of the FDCPA which provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

<u>**COUNT I - Class Action Based Violations of § 1692c(b)**</u>

31.    Plaintiff, RICKY ESPINAL, repeats and re-alleges Paragraphs 14-30 as though fully set forth.

32.    MCM used a third-party vendor to mail MCM's Collection Letters to Plaintiff as well as other similarly formatted Collection Letters to other Florida consumers with addresses within this Judicial District.

33.    In using a form/template collection letter to generate MCM's Collection Letters, MCM caused Plaintiff's name, address, the name of the creditor, the amount owed, the so-called "transaction date", the account number for the creditor, and MCM's reference number to be inserted into form/template collection letter.

34.    MCM's operating system/software involves sending a debtor/consumer's demographic information, as well as the existence and the amount of the debt, to MCM's third-party letter vendor for the purpose of causing the letter vendor to merge this information into letter templates that MCM uses to collect consumer debts.

35.     Plaintiff did not consent to MCM communicating Plaintiff's personal information and Plaintiff's status as an alleged debtor with MCM's letter vendor.

36.     Sharing personal information of a consumer with third-parties violates Section 1692c(b) of the FDCPA. *See, Hunstein v. Preferred Collection and Management Services, Inc.*, 994 F.3d 1341 (11th Cir. April 21, 2021).

37.     Section 1692c(b) of the FDCPA, titled "Communication with third parties," with very limited exceptions, prohibits debt collectors from disclosing to third-parties that a "consumer" is obligated to pay debt to a creditor communicated to third-parties without consent of the consumer. *See, Hunstein v. Preferred Collection & Mgmt. Servs.*, 994 F.3d 1341, 2021 U.S. App. LEXIS 11648 (11th Cir. 2021).

38.     Section 1692c(b), entitled "Communication with third parties," states as follows:

> *Except as provided in section 1692b of this title*, <u>without the prior consent of the consumer</u> *given directly to the debt collector*, … *a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer*, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692c(b) (emphasis supplied).

39.     Section 1692b provides as follows:

Any debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall—

> (1) identify himself, state that he is confirming or correcting location information concerning the consumer, and, only if expressly requested, identify his employer;

(2) not state that such consumer owes any debt;

(3) not communicate with any such person more than once unless requested to do so by such person or unless the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information;

(4) not communicate by post card;

(5) not use any language or symbol on any envelope or in the contents of any communication effected by the mails or telegram that indicates that the debt collector is in the debt collection business or that the communication relates to the collection of a debt; and

(6) after the debt collector knows the consumer is represented by an attorney with regard to the Subject Debts and has knowledge of, or can readily ascertain, such attorney's name and address, not communicate with any person other than that attorney, unless the attorney fails to respond within a reasonable period of time to communication from the debt collector.

15 U.S.C. § 1692b.

40.     Section 1692b relates to the manner in which a debt collector may lawfully communicate "with any person *other than the consumer* for the purpose of acquiring location information." 15 U.S.C. § 1692b (emphasis supplied).

41.     Section 1692a(7) defines the term "location information" to mean "a consumer's place of abode and his telephone number at such place, or his place of employment".

42.     Defendant's transmission of Plaintiff's personal information and Plaintiff's status as a debtor to Defendant's letter vendor did not constitute an attempt to obtain "location information" related to Plaintiff.

43.     "[I]nvasions of personal privacy have been regarded as a valid basis for tort suits in American courts." *Hunstein,* 2021 U.S. App. LEXIS 11648 at *8

(citing *Pavesich v. New England Life Ins. Co.*, 122 Ga. 190, 50 S.E. 68 (1905); *Munden v. Harris*, 153 Mo. App. 652, 134 S.W. 1076 (1911); *Kunz v. Allen*, 102 Kan. 883, 172 P. 532 (1918)).

44.    "[T]he existence of a right of privacy is now recognized in the great majority of the American jurisdictions that have considered the question." *Id.* (quoting Restatement (Second) of Torts § 652A cmt. a. (Am. Law Inst. 1977)).

45.    "[T]he term 'invasion of privacy' comprises an identifiable family of common-law torts—including, most relevantly here, 'public disclosure of private facts.' Invasion of Privacy, Black's Law Dictionary 952 (10th ed. 2014)." *Id.* at *8-*9.

46.    "It is hornbook law that '[o]ne who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.' Restatement (Second) of Torts § 652D (1977)." *Id.* at *9.

47.    "[T]he Supreme Court itself has recognized 'the individual interest in avoiding disclosure of personal matters' and has recognized that 'both the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person.'" *Id.* (quoting *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763, 109 S. Ct. 1468, 103 L. Ed. 2d 774 (1989) (citation and quotation marks omitted)).

48.    The tort of "invasion of privacy" comprises an identifiable family of common-law torts—including, most relevantly here, "public disclosure of private facts." INVASION OF PRIVACY, BLACK'S LAW DICTIONARY 952 (10th ed. 2014). It is hornbook law that "[o]ne who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." RESTATEMENT (SECOND) OF TORTS § 652D (1977). *See also*, 77 C.J.S. RIGHT OF PRIVACY AND PUBLICITY § 32; 62A AM. JUR. 2D PRIVACY § 79.

49.    As discussed above and below, Defendant violated Section 1692c(b) when it used a third-party vendor to mail MCM's Collection Letters to Plaintiff in an attempt to collect the Subject Debts.

50.    Defendant violated Section 1692c(b) when it used a third-party vendor to mail the MCM's Collection Letters to Plaintiff because by using a third-party vendor to mail out the letters, Defendant disclosed Plaintiff's personal contact information and information identifying the Subject Debts to Defendant's letter vendor.

51.    MCM's transmittal of Plaintiff's personal information, Plaintiff's purported status as a debtor relative to the Subject Debts, and the amount of the Subject Debts to Defendant's letter vendor constitutes a "communication" within the meaning of Section 1692a(2), which defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2).

52.     Defendant's use of a third-party letter vendor to merge Plaintiff's demographic data and status as a debtor into Defendant's form collection letters for the purpose of printing and mailing the MCM's Collection Letters to Plaintiff violated Section 1692c(b).

53.     Debt collectors like MCM are susceptible to data breaches.

54.     For example, a March 11, 2021 press-release issued by New York Attorney General Letitia James detailed an incident involving a debt collector where the personal information of up to 21 million individuals were impacted by a data breach involving a debt collector:

> New York Attorney General Letitia James today announced an **agreement between a bipartisan coalition of 41 attorneys general from around the nation and the Westchester County debt collection agency Retrieval-Masters Creditors Bureau, d/b/a American Medical Collection Agency (AMCA), that resolves a multistate investigation into the company's 2019 data breach**. The breach exposed the personal information — including Social Security numbers, payment card information, and, in some instances, names of medical tests and diagnostic codes — of up to 21 million individuals, including 582,146 New Yorkers. AMCA is based in Elmsford, New York and specializes in small-balance medical-debt collection, primarily for laboratories and medical testing facilities.

> "If companies are going to manage New Yorkers' personal information, they must make every effort to protect that information," said **Attorney General James**. "But AMCA's security failures resulted in 21 million Americans having their data illegally accessed. I am committed to protecting New Yorkers' personal data and will not hesitate to hold companies accountable when they fail to safeguard that information. Today's agreement ensures that the company has the appropriate security and incident response plan in place so that a failure like this does not take place again."

https://ag.ny.gov/press-release/2021/attorney-general-james-holds-american-medical-collection-agency-responsible-2019

55.     The impact of the AMCA data breach was widespread. According to an SEC filing submitted by Laboratory Corporation of America Holdings

("LabCorp"), the AMCA data breach impacted approximately 200,000 consumers who received laboratory services from Quest Diagnostics, an affiliate of LabCorp:

> In response to questions it has received, LabCorp® (NYSE: LH) announced that it has been notified by Retrieval-Masters Creditors Bureau, Inc. d/b/a American Medical Collection Agency (AMCA) about unauthorized activity on AMCA's web payment page (the AMCA Incident). According to AMCA, this activity occurred between August 1, 2018, and March 30, 2019. AMCA is an external collection agency used by LabCorp and other healthcare companies. LabCorp has referred approximately 7.7 million consumers to AMCA whose data was stored in the affected AMCA system. AMCA's affected system included information provided by LabCorp. That information could include first and last name, date of birth, address, phone, date of service, provider, and balance information. AMCA's affected system also included credit card or bank account information that was provided by the consumer to AMCA (for those who sought to pay their balance). LabCorp provided no ordered test, laboratory results, or diagnostic information to AMCA. AMCA has advised LabCorp that Social Security Numbers and insurance identification information are not stored or maintained for LabCorp consumers.

> AMCA has informed LabCorp that it is in the process of sending notices to approximately 200,000 LabCorp consumers whose credit card or bank account information may have been accessed. AMCA has not yet provided LabCorp a list of the affected LabCorp consumers or more specific information about them.

> AMCA has indicated that it is continuing to investigate this incident and has taken steps to increase the security of its systems, processes, and data. LabCorp takes data security very seriously, including the security of data handled by vendors. AMCA has informed LabCorp that it intends to provide the approximately 200,000 affected LabCorp consumers with more specific information about the AMCA Incident, in addition to offering them identity protection and credit monitoring services for 24 months. LabCorp is working closely with AMCA to obtain more information and to take additional steps as may be appropriate once more is known about the AMCA Incident.

> In response to initial notification of the AMCA Incident, LabCorp ceased sending new collection requests to AMCA and stopped AMCA from continuing to work on any pending collection requests involving LabCorp consumers.

https://www.sec.gov/Archives/edgar/data/920148/0001193125191650 91/d757830d8k.htm

56.     As recognized by Brian McMananmon, President and CEO of TECH LOCK, Inc., the AMCA data breach was undetected for eight (8) months:

> The breach of AMCA demonstrates receivables management firms, and the sensitive consumer data we are required to manage, are on the radar of hackers who continue to become more sophisticated. As hackers become more proficient, compliance with key security standards such as PCI DSS or HITRUST is only one component of an overall cybersecurity strategy and framework. In this instance, the entity that breached AMCA was present and undetected for 8 months. To appropriately protect the consumer data with which we are entrusted, it requires a strategic security platform that must include 24/7/365 monitoring, detection and response resources. This breach also demonstrates the importance of requiring partners who access to your protected data to undergo a third-party assessment. The importance of implementing a strategic security platform continues to grow as this unfortunate breach indicates.

https://www.revenly.io/blog/large-data-breach-at-healthcare-collection-agency

57.     TECH LOCK, Inc. provides data security for RevSpring, a third-party mail vendor that insideARM (a self-described "thought leaders in consumer finance, facilitating innovation & collaboration"[1]) has recognized as a "leading provider of consumer receivables communication and payment technologies" of the nation's largest third-party mail vendors for the debt collection industry."

https://www.insidearm.com/news/00018587-revspring-raises-the-security-certificati/

58.     A similar medical related data breach involved 45,000 individuals where they accounts were subject to collection activities by MiraMed, a Lombard, Illinois based accounts receivable agency:

---

[1] See, https://www.theiainstitute.com/

Rush System for Health says personal information for about 45,000 patients has been compromised.

The health system disclosed in a financial filing that the data breach, which it learned about on Jan. 22, was due to an employee at one of its third-party claims processing vendors sharing a file containing patient information with an unauthorized party. While medical history was not disclosed, patient names, addresses, Social Security numbers, birth dates and health insurance information for those tens of thousands of patients was exposed.

Hospital spokeswoman Deb Song said today the firm involved is Lombard-based MiraMed, and the breach is considered low risk since no personal financial information was disclosed. She added that all patients involved have been offered 12 months of identify protection services for free.

https://www.chicagobusiness.com/health-care/rush-data-breach-exposes-45000-patients

59.   Credit card issuers have also suffered data breaches. For example, according to a July 30, 2019 press release issued by the Federal Trade Commission ("FTC"), Capital One suffered a data breach involving 100 million United States based consumers. https://www.consumer.ftc.gov/blog/2019/07/capital-one-data-breach-time-check-your-credit-report

60.   The FTC, in a posting entitled "Buying or selling debts? Steps for keeping data secure", has warned the debt collection industry of the risk of data breaches.   https://www.ftc.gov/system/files/documents/plain-language/pdf-0202_buying-selling-debt.pdf

61.   What is worrisome about the widespread use of third-party mail vendors by the debt collection industry is that third-party mail vendors perform mailing services for a vast majority of the collection industry.

62. MCM's disclosure of Plaintiff's personal information and Plaintiff's status as a purported debtor posed a material risk of harm to the privacy interests protected by the FDCPA.

63. MCM's disclosures of Plaintiff's personal information and status as a purported debtor to its third-party letter vendor violated Plaintiff's right to privacy that was recognized by Congress when it enacted the FDCPA.

64. MCM's transmittal of Plaintiff's personal information and information identifying the Subject Debts to its letter vendor was not done in an attempt to comply with Section 1692b.

65. MCM's disclosure to its letter vendor of Plaintiff's personal information and Plaintiff's purported status as a person owing the Subject Debts violated Section 1692c(b)'s prohibition on disclosure of debtor information to third-parties.

66. Section 1692c(b) bears a close relationship to a privacy invasion that American courts have long recognized as cognizable.

67. Congress's judgment indicates that violations of Section 1692c(b) constitute a concrete injury.

68. As set forth above, MCM's disclosures to its third-party letter vendor (of Plaintiff's personal information and status as a purported debtor) caused Plaintiff to suffer from embarrassment, aggravation and emotional distress.

69. Accordingly, Plaintiff has standing to sue MCM for its improper and unlawful disclosure of Plaintiff's personal information and status as a debtor to third-party letter vendors.

70.     The claims asserted in this Count satisfy the elements of FRCP 23(a)(1)-(4) as sufficient numerosity exists such that the joinder of all putative class members is impracticable. Further, the complained of practices involve questions of law or fact common to the class and the claims (and MCM's potential defenses) are typical of the claims or defenses of the class.

71.     Plaintiff will fairly and adequately protect the interests of the proposed class members.

72.     The claims asserted in this Count satisfy the elements FRCP 23(b)(1) because "prosecuting separate actions by or against individual class members would create a risk of":

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

73.     Further, the claims asserted in this Count satisfy the elements FRCP 23(b)(3) because Defendant MCM "has acted or refused to act on grounds that apply generally to the class, so that . . . declaratory relief is appropriate respecting the class as a whole[.]"

74.     The claims asserted in this Count satisfy the elements FRCP 23(b)(3) because "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

75.     The proposed Citibank N.A. class encompasses:

(a) all consumers with mailing addresses located within this judicial district;

(b) where Defendant utilized form collection letters for the purposes of attempting to collect to a consumer based debt allegedly owed in relation to Citibank N.A. branded credit cards;

(c) where Defendant used a third-party letter vendor to transmit the collection letters; and

(d) Defendant's use of a third-party letter vendor resulted in Defendant sending the demographic information of the subject consumers as well as their status as alleged debtors to the letter vendor in violation of Section 1692c(b) of the FDCPA.

76.     The proposed Credit One Bank, N.A. class encompasses:

(a) all consumers with mailing addresses located within this judicial district;

(b) where Defendant utilized form collection letters for the purposes of attempting to collect to a consumer based debt allegedly owed in relation to Credit One Bank, N.A. branded credit cards;

(c) where Defendant used a third-party letter vendor to transmit the collection letters; and

(d) Defendant's use of a third-party letter vendor resulted in Defendant sending the demographic information of the subject consumers as well as their status as alleged debtors to the letter vendor in violation of Section 1692c(b) of the FDCPA.

77.     The proposed classes are limited to one year prior to the filing of the Complaint until such time as Defendant ceases the offending conduct.

WHEREFORE, Plaintiff RICKY ESPINAL respectfully requests that this Honorable Court enter judgment in Plaintiff's favor (as well as the proposed classes) and against Defendant MCM as follows:

a.   Declaring that the practices complained of herein are unlawful;

b.   Appointing Plaintiff as class representative to the above defined classes;

c.   Awarding Plaintiff up to $1,000 in statutory damages as provided by 15 U.S.C. § 1692k(a)(2)(A);

d.   Awarding class members actual and statutory damages as provided by 15 U.S.C. § 1692k(a)(2)(B);

e.   Awarding Plaintiff actual damages as provided by 15 U.S.C. §1692k(a)(1);

f.   Awarding Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. §1692k(a)(3).

**COUNT II – Class Action Based Violations of §§ 1692e, e(2)(A), and e(10)**

78.   Plaintiff RICKY ESPINAL repeats and re-alleges Paragraphs 14-30 as though fully set forth.

79.   In order to gain a competitive advantage over other debt collectors, and in defiance of the prohibitions set forth by Section 1692f(8) of the FDCPA, MCM caused form collection letters to be mailed to consumers like Plaintiff where the subject envelopes are marked with the words "**TIME SENSITIVE DOCUMENT**" or "*Extremely Urgent*".

80.   The competitive advantage that MCM gains by using envelopes marked with the words "**TIME SENSITIVE DOCUMENT**" or *Extremely Urgent* is that Defendant knows that consumers are more likely to open the envelopes marked with these words than plain envelopes that do not contain these words.

19

81.     MCM knows that by enclosing collection letters inside of envelopes marked with the words "**TIME SENSITIVE DOCUMENT**" or *Extremely Urgent*, consumers are more likely read the enclosed letter and pay the subject debt – than if the letter was sent in a plain envelope.

82.     MCM knows that by enclosing collection letters inside of envelopes marked with the words "**TIME SENSITIVE DOCUMENT**" or "*Extremely Urgent*", consumers are more likely read the enclosed letter and call Defendant regarding the consumer's debt.

83.     For example, MCM's Collection Letters informed Plaintiff that he could only take advantage of a certain discounted payment option if Plaintiff called a designated telephone number.

84.     MCM knows that enclosing collection letters inside of envelopes marked with the words "**TIME SENSITIVE DOCUMENT**" or "*Extremely Urgent*" leads to increased connections with consumers in comparison to when MCM caused collection letters to be mailed inside of plain envelopes.

85.     MCM has determined that it collects more money from consumers when it sends letters enclosed within envelopes marked with the words, "**TIME SENSITIVE DOCUMENT**" or "*Extremely Urgent*" in comparison to when MCM caused collection letters to be mailed inside of plain envelopes.

86.     MCM has determined that it collects more money from consumers when it sends letters enclosed within envelopes marked with the words, "**TIME SENSITIVE DOCUMENT**" or "*Extremely Urgent*" notwithstanding the fact that Section 1692f(8) of the FDCPA prohibits this type of wording.

20

87.     As discussed above, MCM has caused numerous Collection Letters to be sent to Plaintiff in an attempt to collection the Subject Debt.

88.     At least one of MCM's Collection Letters was mailed to Plaintiff inside of an envelope that contained the words "**TIME SENSITIVE DOCUMENT**" on its exterior in bold font.

89.     At least one of MCM's Collection Letters was mailed to Plaintiff inside of an envelope that contained the words "*Extremely Urgent*" on its exterior in bold blue colored font.

90.     When Plaintiff observed the words "**TIME SENSITIVE DOCUMENT**" and "*Extremely Urgent*", Plaintiff's attention was immediately drawn to these words.

91.     Reading the words "**TIME SENSITIVE DOCUMENT**" and "*Extremely Urgent*" caused Plaintiff to worry about the contents of the enclosed letters, as Plaintiff was concerned about the so-called "time sensitive" and/or "*Extremely Urgent*" nature of the enclosed Collection Letters.

92.     As a result of the reading the words "**TIME SENSITIVE DOCUMENT**" and "*Extremely Urgent*" on each envelope, Plaintiff immediately opened the Collection Letters to determine why Defendant designated the enclosed letters as being "time sensitive" and "*Extremely Urgent.*"

93.     Plaintiff's response was consistent with MCM's intentions.

94.     After Plaintiff opened each of the subject envelopes, Plaintiff became frustrated and distressed because Plaintiff did not understand how the words of the enclosed letters were more or less "time sensitive" and/or "*Extremely*

*Urgent"* than other collections letters that were mailed to Plaintiff inside of plain envelopes.

95.     To embarrass Plaintiff and cause Plaintiff to pay the Subject Debt, MCM used the words "**TIME SENSITIVE DOCUMENT**" and "*Extremely Urgent*" on the subject envelopes because it knew that third parties would recognize Defendant's return address and understand that the enclosed letters related to discharged debts.

96.     In reality, none of MCM's Collection Letters contained truly "time sensitive" or "*Extremely Urgent*" materials or disclosures because it is MCM's practice to continually offer similar discounted payment options – but this was not immediately known to Plaintiff when Plaintiff read the envelopes or the enclosed letters.

97.     For example, certain of MCM's Collection Letters identified discounted payment options where the same or similar discounted payment options were identified.

98.     As set forth above and below, Plaintiff was subjected to deceptive and misleading conduct by MCM, which materially impacted and shaped Plaintiff's reaction and course of conduct in response to MCM's collection efforts.

99.     MCM's unlawful use of the words "**TIME SENSITIVE DOCUMENT**" and "*Extremely Urgent*"" on its envelopes created a false sense of urgency for Plaintiff, who was struggling to pay down Plaintiff's debts after encountering financial difficulties beyond Plaintiff's control.

100. Further, MCM's unlawful use of the words "**TIME SENSITIVE DOCUMENT**" and "*Extremely Urgent*"" on its envelopes caused third parties to realize that Plaintiff owed money to a debt collector where the envelope, based upon the specific words chosen by Defendant, informed third parties that Plaintiff owed a debt that was allegedly "time sensitive" or "*Extremely Urgent*" in nature.

101. As a result of Defendant using the words "**TIME SENSITIVE DOCUMENT**" and "*Extremely Urgent*"", on more than one occasion, Plaintiff attempted to collect funds necessary to pay down the Subject Debts – at the expense of not paying down a debt that was truly more "time sensitive" or "Urgent" than the Subject Debts.

102. MCM's conduct also posed a material risk of harm to the interests protected by the FDCPA, including Plaintiff's interest in receiving truthful and accurate information regarding MCM's attempts to collect the Subject Debts without confusing Plaintiff and others like him with so-called "time sensitive" and "*Extremely Urgent*" warnings on the envelopes used to mail the subject Collection Letters.

103. MCM's conduct also violated one of the FDCPA's identified interests in ensuring that otherwise compliant debt collectors are not disadvantaged in the marketplace through unlawful conduct.

104. Defendant's actions only served to stress out and embarrass Plaintiff and force Plaintiff to open the subject envelopes to increase the likelihood with which MCM would be able to obtain payment from Plaintiff.

105.   As a result of MCM's purposeful and knowing conduct, Plaintiff suffered concrete harm as a result of MCM's actions, in the form of confusion, aggravation, embarrassment and emotional distress.

106.   Defendant violated §1692e when it used deceptive means to collect and/or attempt to collect the Subject Debts. It was deceptive for Defendant to mark envelopes containing MCM's Collections Letters with the words "**TIME SENSITIVE DOCUMENT**" and "*Extremely Urgent*" printed on an envelope containing a collection letter that was not inherently time-sensitive in nature.

107. Section 1692e(2) of the FDCPA prohibits a debt collector from engaging in any "false representation of – (A) the character, amount or legal status of any debt[.]"

108.   In violation of Section 1692e(2)(A), Defendant engaged in a "false representation"  regarding the character, amount and/or legal status of the Subject Debts when it included the words "**TIME SENSITIVE DOCUMENT**" and "*Extremely Urgent*"  on envelopes that were used to mail MCM's Collection Letters to Plaintiff - were MCM's Collection Letters not inherently time-sensitive or "*Extremely Urgent*" in nature.

109.   For the above reasons, Defendant's practice of using envelopes marked with the words "**TIME SENSITIVE DOCUMENT**" and "*Extremely Urgent*" constituted a false representation - in conjunction with MCM's Collection Letters – where the contents of letters were not inherently time-sensitive in nature or "*Extremely Urgent*" in nature.

24

110.   Because MCM's Collection Letters were not inherently time-sensitive or "***Extremely Urgent***" in nature, Defendant's transmission of the Collection Letters in this manner violated § 1692e(2)(A).

111.   Section §1692e(10) prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

112.   Defendant violated § 1692e(10) when it used deceptive means to collect and/or attempt to collect the Subject Debts by and through causing MCM's Collection Letters to be mailed inside of envelopes marked with the words "**TIME SENSITIVE DOCUMENT**" and "***Extremely Urgent***" where the contents of MCM's Collection Letters were not inherently "time-sensitive" or "***Extremely Urgent***" in nature.

113.   The FDCPA specifically prohibits debt collectors from including this type of language on its envelopes, thus Defendant acted deceptively by including it in clear violation of the FDCPA.

114.   For the above reasons, MCM's practice of using envelopes marked with the words "**TIME SENSITIVE DOCUMENT**" and "***Extremely Urgent***" violated §§ 1692e, e(2)(A), and e(10) because MCM's practice constituted a false, deceptive, and/or misleading representation or means in connection with the collection of the Subject Debts where MCM's enclosed Collection Letters were not inherently "time-sensitive" or "***Extremely Urgent***" in nature.

115.   In particular, many of MCM's Collection Letters served to alarm Plaintiff where certain Collection Letters suggested that Plaintiff would be sued if he did not pay off the Subject Debts.

116.   At various times, MCM sent mixed messages to Plaintiff regarding the threats of litigation where identical or similar threats of litigation were conveyed to Plaintiff inside of envelopes that did not contain the words "**TIME SENSITIVE DOCUMENT**" or "*Extremely Urgent*".

117.   Plaintiff has standing to assert the violations of the FDCPA asserted in this Complaint where MCM's unlawful collection activities pressured Plaintiff into paying off the Subject Debts.

118.   As described above, Plaintiff has suffered actual damages and cognizable emotional distress resulting from the complained of conduct.

119.   Further, even after Plaintiff agreed to pay off the Subject Debts, Defendant continued to send him Collection Letters that threatened to sue Plaintiff for non-payment.

120.   The claims asserted in this Count satisfy the elements of FRCP 23(a)(1)-(4) as sufficient numerosity exists such that the joinder of all putative class members is impracticable. Further, and the complained of practices involve questions of law or fact common to the class and the claims (and MCM's potential defenses) are typical of the claims or defenses of the class.

121.   Plaintiff will fairly and adequately protect the interests of the proposed class members.

122.   The claims asserted in this Count satisfy the elements FRCP 23(b)(1) because "prosecuting separate actions by or against individual class members would create a risk of":

A. inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

B. adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

123.   Further, the claims asserted in this Count satisfy the elements FRCP 23(b)(3) because Defendant MCM "has acted or refused to act on grounds that apply generally to the class, so that . . . declaratory relief is appropriate respecting the class as a whole[.]"

124.   The claims asserted in this Count satisfy the elements FRCP 23(b)(3) because "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

125.   The proposed Citibank N.A. class encompasses:

(a) all consumers with mailing addresses located within this judicial district;

(b) where Defendant utilized form collection letters for the purposes of attempting to collect to a consumer based debt allegedly owed in relation to Citibank N.A. branded credit cards; and

(c) where Defendant caused the collection letters to be mailed inside of envelopes marked with the words "**TIME SENSITIVE DOCUMENT**" or "*Extremely Urgent*".

126.   The proposed Credit One Bank, N.A. class encompasses:

(a) all consumers with mailing addresses located within this judicial district;

(b) where Defendant utilized form collection letters for the purposes of attempting to collect to a consumer based debt allegedly owed in relation to Credit One Bank, N.A. branded credit cards; and

(c) where Defendant caused the collection letters to be mailed inside of envelopes marked with the words "**TIME SENSITIVE DOCUMENT**" or "*Extremely Urgent*".

127.   The proposed classes are limited to one year prior to the filing of the Complaint until such time as Defendant ceases the offending conduct.

WHEREFORE, Plaintiff RICKY ESPINAL respectfully requests that this Honorable Court enter judgment in Plaintiff's favor (as well as the proposed class members) and against Defendant MCM as follows:

a.   Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b.   Appointing Plaintiff as class representative to the above defined classes;

c.   Awarding Plaintiff statutory damages of $1,000.00 as provided under 15 U.S.C. §1692k(a)(2)(A);

d.   Awarding Plaintiff actual damages as provided by 15 U.S.C. §1692k(a)(1);

e.   Awarding class members actual and statutory damages as provided by 15 U.S.C. § 1692k(a)(2)(B); and

f.   Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k(a)(3).

**COUNT III – Class Action Based Violations of §§ 1692f and f(8) of the FDCPA**

128.   Plaintiff RICKY ESPINAL repeats and re-alleges Paragraphs 14-30 and 79-116 as though fully set forth.

129.   Section 1692f of the FDCPA provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

130.   Section 1692f(8) of the FDCPA expressly prohibits debt collectors from "[u]sing any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer" by mail.

131.   Congress's judgment indicates that violations of Section 1692f(8) constitute a concrete injury.

132.   Further, Section 1692f(8) bears a close relationship to a privacy invasion that American courts have long recognized as cognizable.

133.   As discussed above in Count II, MCM attempted to collect the Subject Debts by purposefully causing the words "**TIME SENSITIVE DOCUMENT**" and "*Extremely Urgent*" to be printed on the envelopes that were used to mail MCM's Collection Letters where the subject Collection Letters did not truly contain any "time sensitive" and/or "*Extremely Urgent*" payment dates.

134.   As discussed above in Count II, MCM attempted to collect the Subject Debts by purposefully causing the words "**TIME SENSITIVE DOCUMENT**" and "*Extremely Urgent*" to be printed on the envelopes that were used to mail MCM's Collection Letters where the subject Collection Letters did not truly contain any "time sensitive" and/or "*Extremely Urgent*" messages tied to any real deadline(s).

135.   MCM's use of the subject envelopes in conjunction with mailing the subject Collection Letters to Plaintiff in an attempt to collect the Subject Debts violated 15 U.S.C. § 1692f.

136.   MCM's use of the subject envelopes in conjunction with mailing the subject Collection Letters to Plaintiff in an attempt to collect the Subject Debts violated 15 U.S.C. § 1692f(8).

137.   As discussed above in Count II, MCM's use of the subject envelopes harmed Plaintiff and entitle Plaintiff to receive statutory damages.

138.   Further, as described above, Plaintiff has suffered actual damages and cognizable emotional distress resulting from the complained of conduct.

139.   In particular, many of MCM's Collection Letters served to alarm Plaintiff where certain Collection Letters suggested that Plaintiff would be sued if he did not pay off the Subject Debts.

140.   At various times, MCM sent mixed messages to Plaintiff regarding the threats of litigation where identical or similar threats of litigation were conveyed to Plaintiff inside of envelopes that did not contain the words "**TIME SENSITIVE DOCUMENT**" or "*Extremely Urgent*".

141.   Plaintiff has standing to assert the violations of the FDCPA asserted in this Complaint where MCM's unlawful collection activities pressured Plaintiff into paying off the Subject Debts.

142.   Further, even after Plaintiff agreed to pay off the Subject Debts, Defendant continued to send him Collection Letters that threatened to sue Plaintiff for non-payment.

143. The claims asserted in this Count satisfy the elements of FRCP 23(a)(1)-(4) as sufficient numerosity exists such that the joinder of all putative class members is impracticable. Further, and the complained of practices involve questions of law or fact common to the class and the claims (and MCM's potential defenses) are typical of the claims or defenses of the class.

144. Plaintiff will fairly and adequately protect the interests of the proposed class members.

145. The claims asserted in this Count satisfy the elements FRCP 23(b)(1) because "prosecuting separate actions by or against individual class members would create a risk of":

> B.    inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

> C.    adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

146. Further, the claims asserted in this Count satisfy the elements FRCP 23(b)(3) because Defendant MCM "has acted or refused to act on grounds that apply generally to the class, so that . . . declaratory relief is appropriate respecting the class as a whole[.]"

147. The claims asserted in this Count satisfy the elements FRCP 23(b)(3) because "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is

superior to other available methods for fairly and efficiently adjudicating the controversy."

148. The proposed Citibank N.A. class encompasses:

(a) all consumers with mailing addresses located within this judicial district;

(b) where Defendant utilized form collection letters for the purposes of attempting to collect to a consumer based debt allegedly owed in relation to Citibank N.A. branded credit cards; and

(c) where Defendant caused the collection letters to be mailed inside of envelopes marked with the words "**TIME SENSITIVE DOCUMENT**" or "***Extremely Urgent***" where Defendant used a third-party letter vendor to transmit the collection letters.

149. The proposed Credit One Bank, N.A. class encompasses:

(a) all consumers with mailing addresses located within this judicial district;

(b) where Defendant utilized form collection letters for the purposes of attempting to collect to a consumer based debt allegedly owed in relation to Credit One Bank, N.A. branded credit cards; and

(c) where Defendant caused the collection letters to be mailed inside of envelopes marked with the words "**TIME SENSITIVE DOCUMENT**" or "***Extremely Urgent***".

144. The proposed classes are limited to one year prior to the filing of the Complaint until such time as Defendant ceases the offending conduct.

WHEREFORE, Plaintiff RICKY ESPINAL respectfully requests that this Honorable Court enter judgment in Plaintiff's favor (as well as the proposed class members) and against Defendant MCM as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

    b.  Appointing Plaintiff as class representative to the above defined classes;

    c.  Awarding Plaintiff statutory damages of $1,000.00 as provided under 15 U.S.C. §1692k(a)(2)(A);

    d.  Awarding Plaintiff actual damages as provided by 15 U.S.C. §1692k(a)(1);

    e.  Awarding class members actual and statutory damages as provided by 15 U.S.C. § 1692k(a)(2)(B); and

    f.  Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k(a)(3).

## COUNT IV – Individual Action For Violations of §§ 1692e  & 1692f of the FDCPA

150.  Plaintiff RICKY ESPINAL repeats and re-alleges Paragraphs 14-30 and 79-116 as though fully set forth.

151.  Section 1692e provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

152.  Section 1692e(2)(A) prohibits debt collectors from making a "false representation of . . . the character, amount or legal status of any debt" during the collection of any consumer debt.

153.  Section 1692e(10) which prohibits debt collectors from using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

154.  Section 1692f of the FDCPA provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

155. Defendant violated Sections 1692e, 1692e(2)(A), 1692e(10) and 1692f by continuing to send Plaintiff Collection Letters that threatened to sue Plaintiff for non-payment after Plaintiff had promised to and began to pay off the Subject Debts.

156. Defendant violated Sections 1692e, 1692e(2)(A), 1692e(10) and 1692f by continuing to send Plaintiff Collection Letters that threatened to sue Plaintiff for non-payment after Plaintiff had promised to and began to pay off the Subject Debts where Defendant confusingly, deceptively and misleadingly sent threats of litigation to Plaintiff *inside of plainly marked envelopes* - as well as envelopes marked with words "**TIME SENSITIVE DOCUMENT**" and "*Extremely Urgent*".

157. The above conduct caused Plaintiff to suffer severe emotional distress over being sued to collect the Subject Debts despite Plaintiff having promised to pay off the Subject Debts and in particular after Plaintiff had started to pay off the Subject Debts.

WHEREFORE, Plaintiff RICKY ESPINAL respectfully requests that this Honorable Court enter judgment in Plaintiff's favor (and against Defendant MCM as follows:

  a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

  b. Awarding Plaintiff statutory damages of $1,000.00 as provided under 15 U.S.C. §1692k(a)(2)(A);

  c. Awarding Plaintiff actual damages as provided by 15 U.S.C. §1692k(a)(1); and

d.  Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k(a)(3).

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff RICKY ESPINAL demands a trial by jury of any and all issues in this action so triable of right.

Respectfully submitted,

**Counsel for Plaintiff Ricky Espinal**

Dated:7/9/2021

*/s/ Alejandro E. Figueroa*

Florida Bar No. 1021163
Sulaiman Law Group, Ltd.
2500 S. Highland Avenue
Suite 200
Lombard, IL 60148
Phone: (630) 575-8181
alejandrof@sulaimanlaw.com